SHY, Plaintiff and Appellant, v. SHY, Defendant and Appellant.

**St. Louis Court of Appeals, January 19, 1904.**

DIVORCE: Alimony Pendente Lite. In an action for divorce by the wife on the statutory ground of "indignities," the husband filed answer denying the allegations, and a cross-bill, in turn praying to be divorced on the ground of indignities, the evidence is examined and the husband held to be the innocent and injured party and divorce granted him as prayed in the cross-bill, but alimony *pendente lite* for attorney fees and suit money allowed the wife.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*Pearson & Pearson* for plaintiff-appellant.

*Ball & Sparrow* for defendant-appellant.

"The wife is bound to follow the fortunes of her husband and live where he chooses to live and in the style and manner which he may adopt." Koster v. Koster, 43 Mo. App. 115; Messinger v. Messinger, 56 Mo. 329; Schurman v. Schurman, 93 Mo. App. 99. The husband is entitled to a divorce on the grounds of desertion, when his wife leaves him because he can not, or because he refuses to support her in the style she demands and especially so when by her words and acts she has no intention to return to him. Freeman v. Freeman, 94 Mo. App. 504. The frequent and unjust charge by the plaintiff of infidelity upon the part of the husband, is such an indignity as would warrant a decree of divorce on his crossbill. Clinton v. Clinton, 60 Mo.

App. 296. The acts, conduct and charges of plaintiff constitute indignities that justify decree of divorce for defendant. Griesedirck v. Griesedirck, 56 Mo. App. 94; Owen v. Owen, 48 Mo. App. 208; Lynch v. Lynch, 87 Mo. App. 32.

REYBURN, J.—Plaintiff sued defendant for divorce, and defendant in turn by crossbill asked like relief, each charging against the other in statutory language the perpetration of intolerable indignities, specifically detailed and which will appear in the course of the consideration of the case: upon full hearing, the circuit court refused a divorce to either party, and both husband and wife have appealed; the court further made an order of allowance to the latter of twenty-five dollars per month as temporary alimony pending appeal, fifty dollars for attorneys' fees and fifty dollars for suit money, and defendant excepted to this ruling and also appealed therefrom. After an acquaintance of several years, the parties hereto were married on the fourteenth day of November, 1900, and on the fourth day of May, 1901, the wife left her husband and remained apart from him until the eighth day of October, 1901, when she resumed marital relations with him, but again on the 20th day of July, 1902, plaintiff left finally, and on the 21st day of November, 1902, brought this action. Both parties were natives of Pike county where the suit was brought; plaintiff, a daughter of a tailor, had been educated in the public schools of Louisiana, and at time of the beginning of the acquaintance with her future husband was commendably earning her own livelihood in a millinery store in that city; defendant had always resided on a farm, and to within a year or two of his marriage had farmed in partnership with a married brother, and made his home with him; at death of the latter he had continued to live with the widow and her two small children, and conducted the farm for the joint benefit of his sister-in-law, her children and him-

self. The precise ages of the parties were not disclosed, but from the testimony plaintiff appeared to have been about twenty-five years old, and defendant was probably ten years her senior at time of their union. Defendant took his bride to the house of his widowed sister-in-law to reside; undoubtedly the surroundings of this new life proved distasteful to plaintiff and the hard work upon the farm soon became laborious, and almost from the first she showed great dissatisfaction, and, as recited, after a brief trial she departed, and began a proceeding for divorce which was dismissed, when the defendant, after much persuasion and earnest entreaties, prevailed on her to return upon the condition and assurance, that he should build a home for herself, where they could live away from the sister-in-law and children, and he fulfilled this promise by building a small house under her directions and according to plans approved by her. After completion and occupancy of the new dwelling by them, plaintiff's dissatisfaction continued unabated, and her final departure ensued, and this second suit for divorce was begun.

The causes of divorce set forth by plaintiff, and upon which she relied for legal separation, were that her husband was always quarrelsome and gruff to her and never had a kind or pleasant word for her; that they lived on a farm, and she did all the housework and cooking for them and a hired hand, and defendant's treatment of her was that of a hireling or servant woman working simply for her board, that he gave her no money to purchase clothes with, although a man in well-to-do circumstances, and they had barely sufficient articles in the house for housekeeping and he refused to let her buy necessary articles for housekeeping; that he refused to bring her to town to see her parents, or to let her have a horse to come to town, and she was forced to walk five or six miles to get to town; that he would insist on her rising as early as three o'clock in the morning to get breakfast, and when she declined would

threaten her with violence, and but for the timely appearance of the hired hand might have done her bodily harm; that he frequently spoke disrespectfully of and cursed her mother; that he was dirty and filthy in his person, and would not wash, and kept himself in such condition thereby, that to come in contact with him as his wife was repulsive and loathing to plaintiff, and finally became intolerable.

The crossbill of defendant was based on the averments, that at the time of her first departure, before and thereafter, she accused him of having another woman, meaning defendant's sister-in-law, with whom he lived as his wife, all of which was absolutely untrue and to the great injustice of his sister-in-law as well as himself. That he had offered every inducement in his power to persuade her to return and live with him, that she demanded that he build her a home, and to induce plaintiff to again return and live with him, he did build a house, and she demanded in addition that he have his life insured for $2,000, and make her a deed to forty acres of land. That he declined the last proposition, but she returned to live with him after he built the house, but her conduct towards him became worse, and that she abused him, applied towards him names such as "old fool, jackass and scoundrel." That time and again she locked him out of the house, pulled his mustache and hair, slapped him in the face and rarely spoke a kind word to him. That when he was sick in bed for several days, he sent for plaintiff, who was then visiting her parents, and entreated her to come to him which she refused, declining to visit him or care for him. That she refused to cook for the hands during harvest, and insisted at such season upon going to town when defendant was exceedingly busy with the harvest. That she told him repeatedly she did not love him, but hated him, and would not live with him, and that there were other men in the world besides him and some of them had hugged and kissed her. These, the chief allegations contained

in both petition and crossbill, are thus substantially reproduced, because it is not deemed essential to epitomize the bulky record exhibiting the lengthy examination of the numerous witnesses produced.

The testimony of the plaintiff herself substantiated the grounds of her petition fully and in detail. Of her family her mother testified, but her evidence did not confirm the statements of plaintiff, nor touch upon any material fact. The testimony of a married sister, however, in a measure and within limits, corroborated the evidence of plaintiff; this witness deposed, that while she was visiting them, plaintiff was ill at night, and affiant had been compelled to go to her aid, as defendant continued to slumber undisturbed and indifferent. Also that deponent, on one occasion when the children had been summarily left by their mother, and were dirty, plaintiff and herself had cleaned and cared for them, but they cried and annoyed plaintiff, and witness suggested to defendant that he ought to take his wife away, that she could not bother with these children and with profanity and anger he replied it was none of her business. That defendant accused plaintiff to this witness of laziness, indolence and extravagance and swore at her. To this meagre extent and no further did the statements of plaintiff receive support and confirmation by any other testimony, while they were denied and refuted, not only by defendant and his sister-in-law, but by the avowals of the many witnesses examined on behalf of defendant. This latter testimony was elicited from the tradesmen with whom defendant had dealt for many years; many of his neighbors, knowing him all his life, who were familiar with his habits and mode of life, and had frequent and daily opportunities to observe and judge of his personal conduct, and witness his deportment towards his wife and his sister-in-law; the carpenter and his assistant who aided in planning the house and built it, and during its construction lived with defendant; the contractor who plastered the house,

worked on it and the barn, and also resided at the house of plaintiff for four weeks during the work; the cashier of the bank, with which defendant transacted business, and who, at his solicitation, called on plaintiff after the first separation to bring about a reconciliation; the negro hand, who had worked for defendant for seventeen years; the white farm hand who was with defendant when the new house was erected; the owner of the threshing machine who threshed defendant's wheat; in a word, about all the persons who, in the narrow routine and course of defendant's daily life had been brought into close and familiar intercourse with him for many years, inclusive of the period of his marriage, appeared at the trial and gave their testimony. These witnesses, in unbroken line, negatived emphatically the accusations and complaints made by the plaintiff in her petition and by her testimony and some in one detail and some in other particulars, all tended to confirm and verify the grounds of divorce advanced on defendant's behalf. From this mass of testimony, the conclusion is irresistibly drawn and it was established as facts beyond doubt, that defendant lived in a plain manner but in the usual style befitting his class; that his personal habits respecting cleanliness of person were criticized without just cause, that his sister-in-law was a woman of honest, upright and admirable character, industrious in her habits, who after her husband's death had endeavored to take his place, as far as she could, in continuing the farming partnership existing between him and her brother-in-law, and bring up her small children. That the imputations upon her conduct and insinuations of her relations with the defendant, her brother-in-law, were wholly unfounded and grossly unjust to her. That defendant himself was a plain, industrious, unassuming citizen, engaged diligently in farming pursuits, and during his brief marital experience had discharged his duties towards plaintiff as her husband, with kindness and affection, and that his deportment to-

wards her had been characterized by a degree of patience, kindness and forgiveness rarely encountered. That the base charges made against him imputing improper relations with the widow of his dead brother, to whom it appeared he was sincerely attached and whose death he continued to lament, were wholly untrue and devoid of any foundation. Upon a careful review and consideration of the voluminous testimony submitted, we have no hesitancy in concluding that defendant was the innocent and injured party, and that he fully made out the allegations of his crossbill and is entitled to the relief afforded by the statute. The judgment dismissing plaintiff's petition is accordingly affirmed, and the order awarding plaintiff temporary alimony is reversed, but the allowance for attorney's fees and for suit money is affirmed, and the judgment dismissing defendant's crossbill is reversed and the cause remanded with directions to the trial court to award him a decree of divorce from plaintiff. *Bland, P. J.,* and *Goode, J.,* concur.